UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GAYLE MAUREEN EAGAN, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case # 1:18-cv-1428-DB |
| COMMISSIONER OF SOCIAL SECURITY, | § § § | MEMORANDUM DECISION AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Gayle Maureen Eagan ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 24).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 14. Plaintiff also filed a reply brief. *See* ECF No. 23. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 14) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 22) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on January 24, 2012, alleging disability beginning November 30, 2010 (the disability onset date) due to: "(1) COPD; (2) depression; (3) asthma; and (4) anxiety." Transcript ("Tr.") Tr. 150-59, 182. The claims were denied initially on May 15, 2012, after which Plaintiff filed a written request for a hearing.

Administrative Law Judge William M. Weir (the "ALJ") held a hearing in Buffalo, New York, on June 24, 2013. Tr. 20, 37-67. Plaintiff appeared and testified at the hearing and was represented by Kelly Laga, an attorney. Tr. 20. The ALJ issued an unfavorable decision on September 18, 2014, finding Plaintiff finding capable of performing her past relevant work as an office assistant, or, in the alternative, a significant number of other jobs in the national economy. Tr. 20-29. On April 28, 2016, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. Plaintiff subsequently filed an action in the United States District Court for the Western District of New York, Case Number 1:16cv520-LJV, and the case was remanded for further administrative proceedings on November 8, 2016. Tr. 717.

Thereafter, the Appeals Council issued an order vacating the unfavorable decision and directing the ALJ to: reconsider the nature and severity of Plaintiff's mental impairments consistent with the regulations; further consider the opinion evidence, and explain the weight given to such opinion evidence; further consider the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to the evidence of record in support of the assessed limitations; and obtain supplemental vocational expert testimony, if necessary. Tr. 720-22.

Another hearing was held on May 7, 2018, in Buffalo, New York, wherein the claimant appeared and testified and was represented by Timothy Hiller ("Mr. Hiller"), an attorney. Tr. 619-27. However, the hearing was postponed because the medical expert had not received some of the medical evidence. Tr. 623. A supplemental hearing was held on May 11, 2018. Plaintiff appeared and was again represented by Mr. Hiller. Tr. 630-691. Also appearing and testifying were psychological expert Nicole Mara Martinez, Psy.D. ("Dr. Martinez"), and vocational expert ("VE") Jay Steinbrenner, each via telephone. On August 28, 2018, the ALJ issued an unfavorable decision. Tr. 579-599. Plaintiff then appealed directly to this Court. The ALJ's August 28, 2018 decision thus

became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational

requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his August 28, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014;

2. The claimant has not engaged in substantial gainful activity since November 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

4

3. The claimant has chronic obstructive pulmonary disease and major depressive disorder with anxiety, each of which constitutes a severe impairment (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple, routine tasks, i.e., one or two- step tasks. She should not perform complex work, which is defined as involving multiple simultaneous goals or objectives or the need to independently set quality, quantity or method standards; should have no more than one change per day in general work setting; should have no public contact; may occasionally have supervisor or co-worker contact; and should not be exposed to concentrated pulmonary irritants, such as dust, fumes, and gases;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on July 12, 1966 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant's age changed for Social Security purposes to a person closely approaching advance age and she is currently 52 years old (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). The claimant attended regular school classes and she achieved a GED diploma;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 577-99.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on January 24, 2012, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 599. The ALJ also determined that

based on the application for supplemental security benefits protectively filed on January 24, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff essentially asserts a single point of error. Plaintiff argues that the ALJ improperly weighed the medical opinion evidence, relying on the assessment of the medical expert who testified at the hearing over the 2012 opinion of Plaintiff's treating psychologist and the 2017 opinion of the consultative examiner. *See* ECF No. 14-1 at 13-14. Accordingly, Plaintiff argues, the ALJ's mental RFC determination was not supported by substantial evidence. *Id*. The Commissioner responds that substantial evidence supported the ALJ's RFC determination. *See* ECF No. 22 at 9.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

On May 8, 2012, Plaintiff underwent a consultative psychiatric evaluation with Susan Santarpia Ph.D. ("Dr. Santarpia"). Tr. 437. Plaintiff reported previous diagnoses of depression and anxiety, and hospitalizations for the impairments. *Id*. She also stated she was receiving mental health treatment and counseling at Horizon Health Services ("Horizon"), and she received psychotropic medications from her primary care physician. *Id*. On mental status examination, she had a dysphoric affect, dysthymic mood, and fair insight and judgment. Tr. 438-49. Dr. Santarpia opined that Plaintiff had mild-to-moderate limitations in performing complex tasks independently and relating adequately with others, and mild limitations learning new tasks, making appropriate

decisions, and appropriately dealing with stress. Tr. 440. Dr. Santarpia opined that Plaintiff's evaluation results were consistent with psychiatric problems that may acutely interfere with Plaintiff's ability to function on a daily basis. Tr. 440.

On June 26, 2012, Plaintiff's treating psychologist Irene M. Hulicka, Ph.D. ("Dr. Hulicka"), wrote a letter stating that Plaintiff's psychological state made it impossible for her to perform adequately in any employment situation. Tr. 489. On July 12, 2012, Dr. Hulicka completed a medical examination for employability assessment. Tr. 480. She listed Plaintiff's medical conditions as major depressive disorder, acute stress, panic attacks, and panic disorder with agoraphobia with poor prognosis. Tr. 480. She opined Plaintiff was very limited in maintaining socially appropriate behavior without exhibiting behavior extremes and very limited in appearing able to function in a work setting at a consistent pace. Tr. 481. She further opined that Plaintiff's panic attacks and level of depression were severe, and she was unable to assume work responsibilities. Tr. 481. The record notes that Plaintiff was last treated on July 10, 2012. *Id*. On August 7, 2012, Dr. Hulicka wrote a letter stating Plaintiff was not emotionally capable of being employed.[1] Tr. 483.

On June 16, 2017, Plaintiff underwent a consultative psychiatric evaluation by Janine Ippolito, Psy.D. ("Dr. Ippolito"). Tr. 945. Dr. Ippolitio observed that Plaintiff was a "poor historian" of her own medical history, noting that Plaintiff had difficulty recalling dates and specific details about her past hospitalizations. Tr. 945. Dr. Ippolitio reviewed the 2012 records from Dr. Hulicka and noted that Plaintiff had been diagnosed with major depressive disorder, recurrent severe, panic disorder with agoraphobia, and acute stress disorder. *Id*. Plaintiff denied seeing any mental health counselors, but she indicated being prescribed psychotropic medication by her primary care physician. Tr. 945-46.

---

[1] The ALJ noted that he could not seek reclarification from Dr. Hulicka regarding her opinion because she has since passed away. *See* Tr. 596.

7

Dr. Ippolito reported that Plaintiff was fairly groomed and had tense posture, restless motor behavior, stammering speech, circumstantial thought processes, depressed, anxious and tearful affect, anxious and dysthymic mood, impaired attention, concentration, and memory skills due to emotional distress, and fair insight and judgment. Tr. 946-47. She opined that Plaintiff had marked limitations in interacting adequately with supervisors, coworkers, and the public, sustaining an ordinary routine and regular attendance at work, and regulating emotions, controlling behavior, and maintaining well-being. Tr. 948, 953. She also opined that Plaintiff had moderate limitations in understanding, remembering, and applying complex directions and instructions. Tr. 948, 952. She stated the evaluation results were consistent with psychiatric problems that may significantly interfere with Plaintiff's ability to function on a daily basis. Tr. 949.

As noted above, Dr. Hulicka was Plaintiff's treating psychologist. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2), 416.927(c)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).[2]

---

[2] The Court notes a recent change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of this "treating physician rule" for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

In this case, the ALJ properly evaluated the opinions of Dr. Hulicka and explained his reasons for assigning said opinions little evidentiary weight. Tr. 595-60, 481, 483, 489. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). First, the ALJ properly found that Dr. Hulicka's opinions were generally inconsistent with the treatment record. Tr. 590-91. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). For instance, in July 2012, Dr. Hulicka assessed that Plaintiff had very limited ability to maintain socially appropriate behavior and to function at a consistent pace in a work setting. Tr. 590, 482. However, October 2012 treatment records did not document any depression or anxiety, and Plaintiff did not complain of these symptoms. Tr. 590, 521-22. Moreover, the examination showed Plaintiff to be alert, cooperative, and well-groomed, with stable mood and affect. *Id*. In weighing her opinions, the ALJ also considered Plaintiff's treatment relationship with Dr. Hulicka, which spanned from May 2012 through August 2012, when Dr. Hulicka retired from practice. Tr. 588, 485, 527. *See* 20 C.F.R. §§ 404.1527(c)(1)(2) and

9

416.927(c)(1)(2) (consideration given to examining and treatment relationship of doctor to claimant).

At Plaintiff's May 2018 hearing, medical expert Dr. Martinez testified that she reviewed the administrative record and did not find any evidence that prevented Plaintiff from being able to perform simple repetitive tasks in a low social contact setting. Tr. 633-635. Contrary to Plaintiff's assertion (*see* ECF No. 14-1 at 13-22), the regulations and case law allow an ALJ to rely on a well-supported medical-assessment of a non-examining medical expert like Dr. Martinez, especially where the medical expert reviewed the entire record. *See* 20 C.F.R. §§ 404.1513a(b)(1),(2), 416.913a(b)(1)(2) (evidence to be considered by the ALJ includes evidence from expert medical sources); *Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (ALJ properly relied on medical expert testimony in assessing claimant's functioning); *Hancock v. Barnhart*, 308 F. App'x 520, 521 (2d Cir. 2009) (the opinions of medical experts may constitute substantial evidence in support of an ALJ's determination).

Dr. Martinez reviewed the entire record and testified that Plaintiff's impairments were not as severe as Dr. Hulicka opined, outside of the three-month period during which Dr. Hulicka treated Plaintiff (Tr. 593, 657-58), and that the record otherwise showed Plaintiff had stable functioning and the ability to work in a simple, low contact setting, especially when in appropriate treatment as recommended by her primary care staff (Tr. 593, 659). Despite Plaintiff's objection to the ALJ's reliance on a medical expert's findings, the ALJ was entitled to do so. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). Contrary to Plaintiff's characterization, the treating physician rule is not an exception to the statutory substantial evidence standard of review—the authority that permits an ALJ to weigh a treating physician's responses is the same authority that permits the ALJ to weigh the evidence generally. Once the ALJ has reached a determination regarding substantive findings in

the ALJ's decision, the Court need only ensure that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). That standard is met in this case.

Plaintiff also argues that the opinions of Drs. Ippolito and Santarpia demand a finding of disability. *See* ECF No. 14-1 at 13-15. However, the record reflects that the ALJ considered these consultative examination results and opinions and found they were generally consistent with the evidence of record, and thus, entitled to significant weight. Tr. 590-92, 595-96. See 20 C.F.R. §§ 404.1527(c), 416.927(c); *Michels v. Astrue*, 297 F.App'x 74, 76 (2d Cir., 2008) (Consistency is a factor in deciding the weight accorded to any medical opinion). Notably, the ALJ considered these examinations in finding Plaintiff had significant restrictions and was only able to work in a low contact, non-complex, simple, unskilled position. Tr. 587. Both opinions found that Plaintiff had no limitations in performing simple work tasks or making simple work judgments despite the interference from her impairments. Tr. 439, 955. In fact, even though Dr. Santarpia also found that Plaintiff would have no limitations in maintaining attention and concentration, the ALJ found Plaintiff more restricted based on a thorough review of the record. Tr. 439, 587. Indeed, the ALJ assigned an individualized, restrictive mental RFC finding, which fully accommodated these conclusions.

With respect to Dr. Ippolito's opinion, Plaintiff contends that the ALJ did not adequately accommodate that Plaintiff had marked limitations in social interactions, or that her impairments would cause limitations in her daily limitations. *See* ECF No. 14-1 at 19-21. A marked limitation is defined as a serious limitation, but it is an extreme limitation that is defined as an inability to function. 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 12.00(F)(2)(d),(e); *Miller v. Berryhill*, No. 6:16-CV-06467(MAT), 2017 WL 4173357, at *5 (W.D.N.Y. Sept. 20, 2017) (consultative

examiner's opinion of a moderate-to-marked limitation in the ability to deal with stress does not necessarily mandate a conclusion of disability); *Humes, v. Colvin*, 2016 WL 1417823 (N.D.N.Y. April 11, 2016) (finding that a marked limitation in lifting, carrying, bending or squatting is not inconsistent with light work); *Fiducia v. Comm'r of Soc. Sec.*, No. 1:13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) (marked limitation in interacting with others does not establish that the claimant is disabled, particularly because the ALJ limited the claimant to occasional interaction with others).

In this case, the ALJ properly weighed Dr. Ippolito's opinions, specifically accommodating social interaction limitations by limiting Plaintiff to no public contact and only occasional contact with co-workers and supervisors. Tr. 587. Accommodating Dr. Ippolito's statement that Plaintiff's social restrictions impacted concentration, the ALJ further limited Plaintiff to simple tasks, no complex work, and work which did not involve more than one change per day. Tr. 587. As the ALJ explained, Dr. Ippolito's opinion is consistent with the record, including Dr. Martinez's testimony that Plaintiff would have limitations in her ability to perform complex work and in work involving more than low social contact. Tr. 595-96, 633-35.

The record also confirms Dr. Martinez's testimony that Dr. Ippolito's examination, showing stammered speech, distressed behavior, and poor concentration, measured Plaintiff's functioning without any treatment or medications. Tr. 635-636. This evidence also supports the ALJ's determination that Plaintiff's subjective reports greatly influenced the more restrictive portion of Dr. Ippolito's opinion. Tr. 591-92, 945-52. *See Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (affirming ALJ's determination where assessment appeared to be based on the claimant's subjective complaints); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (affirming ALJ's decision to give less weight to a doctor's opinion because it was based largely upon the subjective

statements of the claimant). The record shows that Plaintiff was regularly cooperative (Tr. 381, 388, 392, 410, 416, 522, 542, 545, 552, 549, 555. 566, 570, 1012, 1019); had normal speech and articulation (Tr. 388, 528); had normal thought processes and content (Tr. 348, 439, 556, 1005, 1059); and appeared emotionally stable (Tr. 393, 556, 1036).

Further, as Dr. Martinez noted, Dr. Ippolito's June 2017 examination was performed while Plaintiff was receiving no mental health treatment, reflecting a period of increased symptoms. Tr. 635-36. Dr. Martinez cited specific references to treatment records that showing that Plaintiff repeatedly refused to consistently engage in formal mental health treatment and counseling, as advised by her medical providers. Tr. 635-37, 958, 1006, 1013, 1020, 1022, 1041, 1056. Thus, Dr. Martinez's conclusion that Plaintiff appeared to be motivated to obtain prescriptions of Xanax, rather than to improve her mental health, appears to be supported by the record.[3] Tr. 636-38, 1009, 1056, 1119. For example, Plaintiff did not seek mental health treatment until her primary care physician refused to continue prescribing Xanax. Tr. 655, 1119. The record shows that in May 2016, Plaintiff's primary care physician declined to refill her prescription for Xanax, writing "NO REFILLS NEEDS [MENTAL HEALTH APPOINTMENT] ASAP". Tr. 1020. It was not until several months after the consultative examination, in January 2017, when she ran out of Xanax, that Plaintiff established care to ask for refills of Xanax. Tr. 958, 636-45, 655. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (stating that contemporaneous treatment notes that document normal findings can provide substantial evidence for the ALJ's findings).

---

[3] Dr. Martinez testified that the use of Xanax is not an appropriate remedy for long-term use as it is used in short-term therapy and can be addictive. Tr. 637. Upon review of the hearing transcript, the Court notes that Plaintiff's counsel's lengthy and contentious questioning of Dr. Martinez regarding Plaintiff's use of Xanax, specifically her qualification to opine about medication therapy, was irrelevant and unnecessary. Tr. 638-49. As noted above, there are numerous references in the record indicating that Plaintiff's source providers were concerned about her use of Xanax and her refusal to seek therapy. The fact that Dr. Martinez is not licensed to prescribe medications does not detract from her qualification as a mental health expert. As the ALJ noted, she is a well-qualified mental expert with a thorough understanding of the program and presumed to know the state of the clinical art. Tr. 595, 596.

The records describing mental health treatment span eight years. *See, e.g.*, ECF No. 14-1 at 14. During that span, Plaintiff did not regularly treat with any mental health physician who might have opined on her condition. The medical expert, on the other hand, evaluated the entire record and was able to compare the times during which Plaintiff attended appropriate, recommended mental health treatment, against the periods where Plaintiff refused counseling and mental health treatment. The Court agrees with the ALJ that Dr. Martinez's assessment is persuasive and well supported. As the ALJ explained, Dr. Martinez had a "broader longitudinal view" than other opinion sources in the record, having reviewed the entire record. Tr. 595, 596. *See Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965 (MAT), 2018 WL 3628253, at *4 (W.D.N.Y. July 31, 2018) ("It also was not error for the ALJ to credit the testimony of medical experts Drs. Levine and Kunstadt. These expert physicians carefully reviewed the complete medical record and rendered opinions consistent therewith, and the ALJ was permitted to rely on those opinions."); 20 C.F.R. §§ 404.1527(c)(6), 416.1527(c)(6) (in "consider[ing] how much weight to give to a medical opinion," ALJs will also consider any factors "which tend to support or contradict the medical opinion," including "the extent to which a medical source is familiar with the other information in your case record . . . .").

Plaintiff also contends the ALJ did not consider the May 2018 opinion of nurse practitioner Sandra Leinweber ("NP Leinweber"). *See* ECF No. 14-1 at 16-17. NP Leinweber opined that Plaintiff was very limited in being able to function in a working setting at a consistence pace and moderately limited in her ability to understand and remember instructions, carry out instructions, maintain attention/concentration, interact appropriately with others, and maintain socially appropriate behavior without exhibiting behavior extremes. Tr. 1123. However, a nurse practitioner is not an "acceptable medical source." 20 C.F.R. §§ 404.1502, 416.902 (nurse practitioners not included in list of acceptable medical sources for claims filed before March 27, 2017). Moreover, a

nurse practitioner cannot be considered a treating source under the regulations—thus, her opinion is not entitled to controlling weight and is not considered a "medical opinion." 20 C.F.R. §§ 404.1527(f), 416.927(f). More importantly, NP Leinweber based her May 2018 opinion on a single examination of Plaintiff one-month earlier, in April 2018, further diminishing its persuasiveness. Tr. 1116-19, 1122. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (finding that a physician who examined the claimant "once or twice" did not develop a treating relationship entitling any opinion therefrom extra weight); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (the longer treating source has treated claimant, and the more times claimant seen by a treating source, the more weight accorded source's opinion).

Despite Plaintiff's claims, substantial evidence supported the ALJ's RFC determination. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Thus, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [his] decision," because he is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).

Furthermore, it is Plaintiff's burden, not the Commissioner's, to demonstrate the functional limitations she claims. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as

15

the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (finding an ALJ can deny benefits based on a lack of evidence on a matter for which the claimant bears the burden of proof). In light of this burden, Plaintiff was specifically required to demonstrate the existence of a severe physical impairment that resulted in an RFC preventing the performance of substantial gainful activity. *See Poupore v. Astrue*, 566 F.3d, 303, 306 (2d Cir. 2009). Plaintiff has failed to meet her burden.

The ALJ considered treatment notes and mental status examinations throughout the record. Tr. 585-86, 589-96. In considering Plaintiff's impairments, the ALJ correctly noted that Plaintiff's mental status examinations showed anxiety and reports of difficulty leaving her home, though she was generally cooperative, with good eye contact, full orientation, alert attention, normal speech, emotionally stable and appropriate behavior, well-groomed appearance, and stable mood and affect. Tr. 589-96, see, e.g. 381, 388, 392, 393, 410, 416, 417, 522, 528, 542, 545, 549, 552, 555, 556, 566, 570, 1012, 1019, 1036. In October 2012, Plaintiff did not exhibit any signs of depression or anxiety, was well-groomed, and described herself as having stable mood and affect. Tr. 590-91, 522. Although she reported difficulty leaving her house, she was able to do so with her daughter or a friend's assistance and reported improvements with medications. Tr. 591, 414, 539, 528, 946. More recently, in April 2018, despite anxious and depressed mood and poor memory, insight, and judgment related to a lack of treatment and medications, Plaintiff retained clear and coherent speech, pleasant and cooperative behavior, calm appearance, full orientation, and an alert sensorium. Tr. 593-94, 1119.

Although Plaintiff argues that her anxiety and agoraphobia was so severe as to require a finding of disability, Plaintiff's medical and non-medical sources regularly observed Plaintiff to be cooperative (Tr. 381, 388, 392, 410, 416, 522, 542, 545, 549, 552, 555, 566, 570, 1012, 1019); well-groomed (Tr. 522, 528, 542, 545, 552, 549, 555, 566, 570, 1012, 1019); and emotionally stable (Tr. 393, 556, 1036). Plaintiff also often exhibited good concentration and attention; fair to good insight and judgment; and calm demeanor, notwithstanding her claims of disabling social limitations and anxiety. Tr. 252, 348, 250, 378, 439, 1005, 1008, 1058, 1059. Even Dr. Hulicka opined that Plaintiff had no limitations maintaining attention and concentration. Tr. 481.

As the ALJ noted, the record also reflects that Plaintiff engaged in a wider range of daily activities than she professed. Tr. 588. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible). Here, the ALJ noted that Plaintiff had the ability to arrange for both her medical appointments and her transportation; she managed her own money; and she indicated she had the capacity to do household chores. *Id*.

Plaintiff here points to no evidence in the record that the ALJ should have considered and failed to do so. Instead, Plaintiff merely asks the Court to reweigh the evidence. *See* ECF No. 14-1 at 15, 19-21. *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d

Cir. 2013) (summary order) ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

For all the reasons explained above, the Court finds that the ALJ appropriately considered the evidence of record, including the clinical findings and the medical opinions, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 22) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE